## THOMAS v. THOMAS.
### No. 4805.

Court of Appeal of Louisiana.
Second Circuit.
June 4, 1934.

Lee J. Novo, of Alexandria, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellee.

TALIAFERRO, Judge.

The Dodge coupé of plaintiff, occupied by himself and five friends, collided with the Ford coupé of defendant, William Thomas, occupied by himself and a woman companion, in the intersection of Fourth and Fulton streets, in the city of Alexandria, La., about 11 o'clock p. m., April 23, 1933. Each car was being driven by its owner when the collision occurred. The Dodge was traveling in Fulton street, going in a northeasterly direction, while the Ford was coming out of Fourth street, which intersects Fulton at right angles, moving in a southeasterly course. Traffic on Fulton street has the right of way.

Plaintiff sues to recover damages for personal injuries to himself resulting from the collision. Defendant's insurer, Commercial Standard Insurance Company, of Dallas, Tex., is also made defendant. The specific acts of negligence charged to defendant, entitling recovery by plaintiff, are alleged to be: That he was traveling at an excessive rate of speed, in violation of the traffic laws of the city of Alexandria; that he did not bring his car to a stop before entering the intersection, as was his duty under the law; and that he drove his car straight into the left side of plaintiff's car while about the center of the intersection.

Defendants deny that the collision was caused by any negligence of William Thomas, but assert it was due solely to the carelessness, negligence, and lack of care of plaintiff, Winston Thomas, in that he was driving his car, without lights, at a rate of speed in excess of 40 miles per hour, in violation of law, and ran into defendant's car while it was moving at a very slow rate of speed, making a left turn into Fulton street. Defendants aver that William Thomas brought his car to a stop at Fulton street, as required by law, and looked both ways for traffic, and, seeing and hearing none, began the left turn, which was about half completed when plaintiff's car, without warning of its approach, ran into his car, striking its right side with terrific force. In the alternative, defendants plead that, should it be found and held that William Thomas was guilty of any negligence in connection with said collision, the above-recited acts of negligence on the part of plaintiff, contributing to said accident as a proximate cause thereof, bar recovery by him. Contributory negligence is specially pleaded.

The lower court accepted defendants' version of the accident and denied recovery to plaintiff. He, after unsuccessful application for rehearing, appealed.

There were no eyewitnesses to the accident, other than the occupants of the two automobiles. Two of those in plaintiff's car did not testify in the case. Their absence is not explained. William Thomas and his companion testified. As is the rule, the testimony of these witnesses, by sides, presents a hopeless

mass of contradictions. Plaintiff and his witnesses contend that the lights of his car were burning brightly, and that he was traveling at not more than 15 miles per hour when the collision occurred. All of them, save Clarence Hall, say that they did not see defendant's car until it was a few feet from them. Hall says that he saw the other car about half a block from the intersection when plaintiff's car was "near about the intersection." As the night was dark, this witness, at the distance stated, could only have seen the lights of defendant's car, if half a block away. All of them are positive defendant's car was traveling at a rapid rate of speed and that it did not stop before going into the intersection, but proceeded directly across it and struck plaintiff's car in the left side, causing it to turn diagonally to its right.

William Thomas and his companion give the same version of the facts attending the accident. They say that his car did come to a stop before undertaking the turn to their left in Fulton street, and that this defendant looked both ways for traffic and, seeing none, attempted the left turn into the intersection. They are positive plaintiff's car did not have any lights burning, and that it was traveling at a speed of from 35 to 40 miles per hour. On the question of speed of plaintiff's car and the lack of lights thereon, these witnesses are corroborated by the testimony of a man who lives on Fulton street three blocks from the scene of the collision, and saw plaintiff's car pass his home, as he was entering it, at a rapid rate of speed, without lights burning, and heard the noise from the collision within a brief lapse of time thereafter. He went to the scene and recognized the Dodge coupé as being the car that had immediately prior passed his home.

The allegations of plaintiff's petition, his own testimony, and that of his witnesses, are to one accord as to the cause of this collision, and that is that defendant's car came rapidly out of Fourth street and rammed plaintiff's car broadside, inflicting the injury to its left-hand door. Whatever uncertainty there may be on other controverted points of fact in the case, to our minds there is none as to the erroneous position of plaintiff on this major premise. The testimony is uncontradicted that immediately after the collision there were no signs of damage or injury to any part of the front end of defendant's car. Had he rammed plaintiff's car in the manner contended by him, going at the rate of speed alleged, or even at a much slower speed, the damage to the front parts of the car, as well

as to the running board of plaintiff's car, would have been serious. Therefore, having reached the conclusion that the collision did not happen as plaintiff contends, we are called upon to decide how, in view of all the testimony in the case, it did happen. We think the evidence of physical injury to the two cars and their movements following the collision goes far toward making certain the relative positions of the cars when they collided, and corroborates defendant's version thereof.

Plaintiff's car suffered the following injuries: Left headlight crushed; front end of left fender badly bent downward; metal covering of left door scarred and door mashed inward; metal covering of cab immediately above and to rear of left door frame mashed and rumpled; the exterior edge of left rear fender to point above top of wheel was mashed and rumpled. The left running board was uninjured. One point of impact on defendant's car was where the right front fender and running board join; the right door and running board were injured, the door being bent in; the flywheel housing was broken, reflecting the result of a violent blow to the car; other minor injuries were noticeable. Plaintiff's car, after the impact, turned diagonally to its right, left the street, crossed the curb and sidewalk, and rested in the yard of a private home, 20 feet or more from the point of collision. Defendant's car described a semicircle to its left, stopped with front end against the curb, pointing in the direction from whence it came, with its rear toward the street. These movements of the cars and the location and nature of injuries thereto, in our opinion, indicate strongly that defendant's car was in the act of turning toward its left when struck by the left front fender and headlight of plaintiff's car, and, as both cars were to some extent going in the same direction and the blow being slightly at an angle, the movement of the two cars thereafter is what would have been expected under these circumstances. It is not improbable that the cabs of the cars swung violently against each other as the one turned to its right and the other to its left, causing some or all of the injuries to the doors of each. There is an intimation in the record that some of the injuries to plaintiff's car resulted from its contact with a tree or trees in the private yard where it rested, but this is not proven. Such a contact would have left signs on the tree struck. There is no testimony in the case that such was done.

We think the evidence in the case,

when fairly weighed and considered, proves with legal certainty that plaintiff's small car, loaded with six grown people, was traveling at a rapid rate of speed down Fulton street without any lights burning, and that these two elements of negligence contributed proximately to the accident. It is true he had the right of way, but this did not entirely protect him against his own carelessness and lack of care in the respects mentioned. The actions of his own car after the collision strongly show that it was going at a faster speed than the car of defendant.

■ Whether or not defendant brought his car to a dead stop before entering the intersection, in view of plaintiff's own negligence, is not of primary importance in the case. He states that he looked for traffic before entering Fulton street and did not see plaintiff's car approaching, because it did not have lights burning. If plaintiff's car had had lights, defendant certainly would have seen them, and, if he had seen them, he certainly would not have deliberately driven into the approaching car. The lights of defendant's car were burning and should have been seen by the occupants of the car of plaintiff.

■ In a case of this character, the decision of the trial judge on the questions of fact involved should be given the utmost weight. He had unusual opportunity to weigh and consider those questions. He tried a criminal charge against plaintiff for violating the traffic laws of the city of Alexandria in connection with the accident, wherein the same witnesses gave evidence, as in this civil case, and convicted him. There certainly is no manifest error in his judgment; to the contrary, after a careful study of the record, we fully agree with his judgment.

■ After this case was tried and submitted, but before judgment, plaintiff filed a motion to have it reopened. The motion is based upon the fact that the woman companion of defendant gave her name and was summoned under the name of "Miss Billie Smith," whereas she was the divorced wife of Percy C. Miller, her given name being "Lessie" and not "Billie," and, because of this misrepresentation of her name, plaintiff was unable to, and was deprived of the opportunity to, "ascertain the true name of the witness, nor her character and reputation for truthfulness and veracity." These facts were also set up in the application for rehearing and are urged here as cause for reversing or remanding the case. Plaintiff does not allege that he can establish that this witness is unworthy of belief, nor does he allege that he was surprised by the nature of the testimony she gave in the case. When she testified, and her true name was learned, no request was made to the court to delay trial until her past reputation, etc., could be delved into. We are unable to see wherein plaintiff's rights have been materially prejudiced because of this witness' conduct in regard to her name, and do not think a different judgment would have been rendered had not this happened.

As stated above, the trial judge's position to fairly and correctly judge the testimony adduced and the credibility of the witnesses in the case was far superior to our own. We could give no sound reason for reversing him.

Therefore the judgment appealed from is affirmed.